PETER A. WEDDERIEN, Plaintiff Below-Appellant,
v.
ALAN S. COLLINS, JR. & ANGELA M. COLLINS, Defendants Below-Appellees.
No. 102, 2007.
Supreme Court of Delaware.
Submitted: August 28, 2007.
Decided: November 6, 2007.
Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DUPONT RIDGELY, Justice.
This 6th day of November 2007, it appears to the Court that:
(1) Appellant Peter A. Wedderien appeals the Superior Court's dismissal of his complaint seeking a Writ of Scire Facias Sur Mortgage and an in personam judgment against Appellees Alan S. Collins, Jr. and Angela M. Collins ("Collins"). He also appeals the Superior Court's entry of judgment against him on Collins's counterclaim. After a bench trial, the Superior Court found Wedderin's complaint to be premature and that he breached his contract with Collins by failing to pay certain taxes, as promised in their agreement and bill of sale for a business. We find no merit to Wedderien's appeal and affirm.
(2) Broad Creek Enterprises is a Delaware Corporation that owns real property in Sussex County that is the location for The Pit Restaurant. Wedderien owned all of the common stock of Broad Creek. On July 28, 2002, Wedderien and Collins signed a Contract of Sale for the real property and his stock. In the contract, Wedderien and Broad Creek Enterprises promised to deliver to Collins all documents "demonstrating that no taxes are outstanding against the business or assets as of the date of closing."[1] Wedderien and Broad Creek Enterprises also represented that state and federal taxes related to the business that were due and owing at the time of sale had been or would be paid in full by the closing date.
(3) On August 28, 2002, Wedderien and Collins signed an Agreement and Bill of Sale for the Business and Broad Creek Enterprises.[2] Closing took place that day. As part of the consideration for the contract and the agreement, Collins delivered a promissory note, secured by a second mortgage to Wedderien. At closing, both parties were represented by the same attorney who drafted all documents.
(4) Beginning in September 2003, Wedderien stopped receiving payments from Collins. He retained an attorney who contacted Collins on February 11, 2004 to give notice of default and an opportunity to cure with late fees as required by Paragraph 6 of the note.[3] The note Collins signed had the following provision regarding failure to pay:
6. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charge for Overdue Payments. If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.
The relevant terms of the mortgage provide that "if any installment is overdue and unpaid for a period of thirty (30) days following its due date, the holder hereof may, at its option, declare the entire unpaid principal balance immediately due and payable."
(5) On March 18, 2004, Collins provided a check to cover the five outstanding monthly payments through his attorney, but refused to pay any late fees because he did not have notice of Wedderien's new mailing address.[4] Collins also notified Wedderien that he had received a notice from the IRS that Broad Creek Enterprises owed approximately $3,233.39, exclusive of $308.98 that the IRS had deducted from Broad Creek Enterprises' most recent tax overpayment. At trial, Collins testified that the outstanding IRS amount was incurred during the month of August 2002.
(6) Wedderien continued to receive the monthly payments from March 2004 through July 2005, although they were regularly twenty or twenty-five days late.[5] Collins's August check for payment was returned to Wedderien by his bank on October 26, 2005 for insufficient funds (the "NSF Payment"). Through his attorney, Wedderien sent another letter to Collins dated November 30, 2005 (the "November Letter"). This letter, titled "Notice of Default and Acceleration," informed Collins that because of the NSF Payment and because he had not received payments in October and November, Collins was in default of the mortgage, and Wedderien was accelerating the mortgage under the relevant provisions of the note.[6] The letter provided Collins with the total amount due plus penalties and interest, and demanded that he pay it within fifteen days.[7]
(7) On December 12, 2005 Collins paid the August 2005 installment with a late fee. Five days later, Wedderien commenced this action on the mortgage and the note even though all previously due monthly installments had been paid. Wedderien also continued to accept monthly payments from Collins after the filing of the Amended Complaint.[8] In their Answer, Collins denied any default and counterclaimed for breach of contract against Wedderien based upon the outstanding tax debt owed by Broad Creek Enterprises prior to the sale on January 18, 2006. The case proceeded to trial before a Superior Court Judge.
(8) After each party presented evidence, the trial judge interpreted the terms of the note and mortgage regarding notice of default. He found that together they required the note holder to send written notice of default, and the borrower would have 30 days to cure before the note holder could accelerate and demand the full amount of unpaid principal plus interest due. The trial judge also determined that because the November Letter did not properly give notice prior to the demand for accelerated payment, Wedderien's complaint was premature. On the counterclaim, the trial judge considered Wedderien's testimony and found that both he and Broad Creek Enterprises promised that the debts related to the IRS notice would be paid before the August 28 closing date. Thus the amount owed to the IRS related to payments incurred in August 2002 when Wedderien still owned the business. Alternatively, the trial judge found that Collins was a third-party beneficiary of the promise made by Wedderien on behalf of the corporation. The court then awarded Collins $4,282.42, representing the current amount due based on the IRS's most recent notice plus the amount taken from Collins's overpayment in 2003. This appeal followed.
(9) Wedderien first argues that the NSF Payment put Collins in default and justified his acceleration of the Mortgage. According to Wedderien, the terms of the mortgage did not require him to give Collins any opportunity to cure a default. According to Wedderien, the November Letter correctly provided Collins notice of acceleration, which Wedderien set at fifteen days from the date of the letter. We review interpretations of contract language and the trial court's legal conclusions de novo.[9]
(10) The relevant terms of the note are clear and unambiguous. The failure to pay the full amount of each monthly payment on its due date puts the borrower in default. Because of Collins's NSF Payment, of which Wedderien received notice on October 26, 2005, Collins was then in default under Paragraph 6(B) of the note. Wedderien applied Collins's subsequent monthly payments toward the NSF Payment, leaving a recurring negative balance for the mortgage. Regardless of how Wedderien accounted for Collins's payments, at the time of the November Letter, Collins was one month behind in his payments. We concluded that Wedderien properly exercised his option to invoke Paragraph 6(C), as he had on two previous occasions.
(11) Because Collins was in default, Paragraph 6(C) permitted Wedderien to send a written notice of the due date for the overdue amount. This due date had to be 30 days after the date on which the notice was mailed, which would have been 30 days after November 30, or December 30. The Superior Court concluded that Wedderien could not unilaterally shorten this time to fifteen days, as he purported to do in the November Letter. Collins paid the outstanding balance plus penalties on December 22, within the 30-day period required by the note.
(12) The parties dispute the availability of a specific period of time to cure the default. The Superior Court found that the mortgage and note had to be construed together to determine the parties' intentions.[10] Because the mortgage was silent on how Wedderien could make a declaration that the entire balance was due and payable, the trial judge read them together and found that Paragraph 6(C) of the note controlled. We agree.
(13) The relevant provisions of the note unambiguously provide that in the case of a default of the mortgage, notice and an opportunity to cure must be given prior to the note holder's acceleration of the entire debt. In other words, the plain language of Paragraph 6(C) provided for acceleration only if Collins failed to pay the default after receiving the requisite 30 days notice. Here, Collins cured the default within 30 days of the mailing of the notice of default. The Superior Court did not err in concluding that Wedderien's complaint was premature.
(14) Next, Wedderien argues that the counterclaim should have been dismissed for three reasons: the claim violated the statute of limitations, Collins failed to present sufficient evidence to support the counterclaim during trial, and Collins lacked standing to assert the claim on behalf of Broad Creek Enterprises. We review the factual findings of a judge during a bench trial to determine whether they are clearly erroneous and not supported by credible and sufficient evidence in the record.[11] For questions involving mixed questions of law and fact, our review is de novo.[12]
(15) The statute of limitations for a breach of contract claim is three years.[13] The evidence showed that the IRS notice to Collins regarding the outstanding balance was dated August 11, 2003 for the tax period ended September 30, 2002. Thus, Collins's filing of his counterclaim on January 18, 2006 was within the required limitations period. Wedderien's assertion that Collins's claim is outside the statute of limitations is without merit.
(16) Wedderien also argues that Collins presented insufficient evidence for the court to find that the amount due from the IRS notice covered the period prior to the August 28, 2002 sale when he owned the business. Particularly because the notice covered the tax period that ended on September 30, 2002, Wedderien argues that the amount due to the IRS could have included the month of September, when Collins owned the business. Wedderien's argument ignores Collins testimony that the period reflected in the IRS notice was "for the third quarter, which wasthe month was August that it wasn't paid." The IRS notices were exhibits at trial and the trial judge accepted Collins's testimony. The findings of fact are sufficiently supported by the record and are not clearly erroneous.
(17) Wedderien's last argument is that Collins lacked standing. Although this issue was raised as an affirmative defense in the answer which was filed, Wedderien did not raise the issue by motion or at trial. Because he did not, he is precluded from raising this issue on appeal.[14]
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Taxes for purpose of this section of the contract included "any and all business related taxes, including but not limited to gross receipts sale taxes, state and federal employee income tax withholding, federal social security tax withholdings, employment taxes, unemployment compensation taxes and any business or license fees."
[2] The assets of the corporation included personal property and the alcohol beverage license related to the Operation of the Pit Restaurant. The total purchase price was $260,000.
[3] The five missing payments were for September 2003-January 2004.
[4] Approximately eight months after closing, Wedderien moved from Sussex County to North Carolina. Prior to moving, he contacted the post office to forward his mail and testified that he notified Collins of this move by letter. At trial, Wedderien testified that he did not make a copy of the letter, and Collins testified that he never received any notice from Wedderien. While in North Carolina, Wedderien moved to three different cities in the course of a year and a half.
[5] Despite receiving the March 18 letter from Collins and acknowledging receipt and payment of the outstanding balances less late fees, Wedderien sent another letter on December 13, 2004 to Collins notifying him that he was still in default from not paying the September 2003-January 2004 installments and that the mortgage would be accelerated unless the default was cured by January 15, 2005.
[6] At trial, Wedderien explained that although Collins had made the October and November payments, he had applied them retroactively to cover the August and September payments.
[7] Wedderien, in the Pre-Trial Stipulation, later conceded that the total amount demanded in the letter was incorrect because it ignored monthly payments received by Wedderien prior to November 30, 2005.
[8] The Amended Complaint was signed December 30, 2005.
[9] Seaford Golf & Country Club v. E.I. duPont de Nemours & Co., 925 A.2d 1255, 1261 (Del. 2007)
[10] Metro. Life Ins. Co. v. Monroe Park, 442 A.2d 503, 507 (Del. Super. Ct. 1982) ("It is the usual view that the mortgage and a note or bond secured by it are considered part of one transaction and, where possible, construed together in order to gain the intentions of the parties."), rev'd on other grounds, 457 A.2d 734 (Del. 1983).
[11] Homestore, Inc. v. Tafeen, 888 A.2d 204, 217 (Del. 2005); Levitt v. Bouvier, 287 A.2d 671, 673 (Del. 1972).
[12] Zirn v. VLI Corp., 681 A.2d 1050, 1055 (Del. 1996) (discussing the scope of this review).
[13] DEL. CODE ANN. tit. 10, § 8106 (1999).
[14] Del. Supr. Ct. R. 8. Even if we did consider his standing claim, Wedderien's argument would fail. Wedderien argues that Collins is not suffering any injury-in-fact because Broad Creek Enterprises is the party being penalized by the IRS in its regular application of the Business's overpaid employment taxes against the outstanding debt created by Wedderien, which would make them an indispensable party to the counterclaim. However, one of the Superior Court's findings was that Collins, in his personal capacity, was "clearly [a] third-party beneficiar[y] of [Wedderien's] promise [to pay the debts owed by Wedderien and Broad Creek Enterprises prior to the date of closing]."