# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BURTON WEINSTEIN, CAROLE NIMEROFF, CEDARVIEW OPPORTUNITIES MASTER FUND, LP, JEFFREY SCHNAPER, NIGEL GREGG, and WILLIAM SHEPPARD et al., | ) ) ) ) ) ) ) | C.A. No. N18C-04-043 MAA |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LUXEYARD, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

Submitted: November 9, 2021
Decided: January 14, 2022

## <u>MEMORANDUM OPINION</u>

Julia B. Klein, Esquire (Argued), of KLEIN, LLC, Wilmington, Delaware, Attorney for Plaintiffs.

Ann M. Kashishian, Esquire, of KASHISHIAN LAW, LLC, Wilmington, Delaware, and Jack J. Nichols, Esquire (Argued), of JACK J. NICHOLS, P.C., Houston, Texas, Attorneys for Defendant.

**Adams, J.**

Defendant issued convertible debentures in varying amounts to Plaintiffs in April 2012. Plaintiffs allege that the convertible debentures matured on January 31, 2014, and that the principal balance outstanding under each convertible debenture, plus interest, became due and payable on that date. Defendant, however, has failed to pay any amount to Plaintiffs.

Plaintiffs' remaining claim is a single cause of action for breach of contract. The Court holds that Plaintiffs' claim fails on statute of limitations grounds. Namely, Plaintiffs' claim falls under the three-year statute of limitations for breaches of contract, rather than the six-year statute of limitations for promissory notes, and is therefore untimely. Consequently, Plaintiffs are precluded from obtaining the relief they seek in this action.

## I. Factual Background

### A. Parties and Relevant Non-Parties

Plaintiffs Burton Weinstein, Carole Nimeroff, Jeffrey Schnapper, Nigel Gregg, William Sheppard, and Cedarview Opportunities Master Fund, LP (collectively, "Plaintiffs") brought this action to recoup investments they made in Defendant Luxeyard, Inc. ("Luxeyard") during one of Luxeyard's initial rounds of financing.

Non-party Amir Mireskandari ("Mireskandari") is Luxeyard's co-founder, board member and interim CEO. Non-party Mark Lev ("Lev") is Plaintiffs' representative, who facilitated Plaintiffs' investments in Luxeyard.

B. Background

In April 2012, Luxeyard, a luxury goods retailer that offers indoor furnishings, issued convertible debentures ("CDs") in varying amounts to Plaintiffs.[1] The terms of the CDs are identical and provided for conversion to common stock in two ways: voluntary conversion and mandatory conversion.[2] Each CD that Luxeyard issued to Plaintiffs referenced a corresponding Debenture Purchase Agreement (DPA).[3] The

---

[1]    *See* JXs 13, 16, 18, 21, 24, 27; Trial Tr. (Nov. 24, 2020) at 29:18-21. The specific principal amount of CDs were as follows: Cedarview Opportunities Master Fund, LP ($100,000.00); Burton Weinstein ($25,000.00); Carole Nimeroff ($25,000.00); William Sheppard ($50,000.00); Jeffrey Schnapper ($25,000.00); and Nigel Gregg ($25,000.00).

[2]    *See*, *e.g.*, JX 13 at Art. 2(a) and (f). Pursuant to Article 2(a), voluntary conversion occurs at the option of the holder. Pursuant to Article 2(f), mandatory conversion occurs if each of the following conditions are met: (a) Luxeyard shares have to be registered or available for resale under Rule 144 (or similar rule); (b) the closing bid price for Luxeyard's common stock remains at or above $1.00 for ten consecutive trading days; and (c) the daily volume of Luxeyard's common stock during such consecutive ten-day period is at least 50,000 shares per day.

[3]    *See* JXs 14, 19, 22, 25, 28. In the Joint Pre-Trial Stipulation ("PTS") and during trial, Plaintiffs objected to the inclusion of the DPA as an exhibit on the grounds that "Plaintiffs ha[d] never seen this document and d[id] not know what it [wa]s or contains." The Court overrules this objection. Plaintiffs Weinstein, Cedarview Opportunities Master Fund, Schnapper, and Gregg each signed the DPA investor signature page. While Luxeyard did not provide a signature page for Plaintiffs Sheppard and Nimeroff for the DPA, the DPA is referenced in each of the CDs signed by Plaintiffs. Thus, all Plaintiffs were either on actual or constructive notice of the DPA.

3

DPA defined terms within the CDs and provided for additional terms, such as representations and warranties, closing conditions, and other provisions.

The CDs set the maturity date for the investments for January 31, 2014, provided that the CDs had not converted into shares.[4] Luxeyard admitted that it defaulted under the CDs by failing to repay the amount owed.[5]

C. Procedural Posture

Plaintiffs commenced this litigation against Luxeyard and Mireskandari on April 5, 2018.[6] On June 25, 2018, Luxeyard answered the complaint and admitted to the breach of contract claim against it.[7] On August 23, 2018, the Court dismissed Mireskandari from the case for failure to state a claim and lack of personal jurisdiction.[8] After Mireskandari's dismissal, two sets of Delaware counsel withdrew their representation of Luxeyard.

On January 30, 2020, after Luxeyard's current Delaware counsel entered her appearance, Luxeyard requested leave to amend its answer to the complaint.[9] The

_____

[4]     *See, e.g.,* JX 13.
[5]     PTS at 3.  Although Luxeyard claims that the CDs converted into equity, a fact which Plaintiffs dispute, the resolution of this issue is not pertinent to this decision because Plaintiffs failed to file their action within the prescribed three-year statute of limitations, as described herein.
[6]     *See* Dkt. 1.
[7]     *See* Dkt. 5.  In its Answer, Luxeyard also included an affirmative defense that "Plaintiffs' claims are barred by the applicable statute of limitations."
[8]     *See* Dkt. 14.
[9]     *See* Dkt. 34.

4

Court denied Luxeyard's motion to amend its answer on March 23, 2020.[10] A two-day bench trial was held on November 24, 2020 and November 30, 2020. At trial, the parties introduced forty-one exhibits. The parties completed post-trial briefing on April 16, 2021. On May 14, 2021, during post-trial argument, the Court ordered the parties to confer regarding resolving the action without Court action.[11] On June 14, 2021, the parties informed the Court that they were unable to reach a resolution.[12]

Upon recognizing that the CDs and DPA contained conflicting choice of law provisions, the Court ordered the parties to submit supplemental post-trial briefing addressing the conflict.[13] The parties completed supplemental post-trial briefing on November 9, 2021.

D. Parties' Contentions

Plaintiffs' sole remaining claim for relief is for breach of contract. Plaintiffs seek all principal amounts due under the CDs, as well as accrued pre-judgment interest, post-judgment interest, and all attorney's fees and costs in bringing the litigation.

Luxeyard contends that Plaintiffs are precluded from obtaining such relief because they failed to bring their claims within the applicable statute of limitations.

---

[10]    *See* Dkt. 45.
[11]    *See* Dkt. 88.
[12]    *See* Dkt. 90.
[13]    *See* Dkt. 91.

Notwithstanding the statute of limitations, Luxeyard argues that Plaintiffs' investments converted into shares of Luxeyard automatically by operation of the mandatory conversion provisions in the CDs.[14]

## II. Legal Analysis

The statute of limitations is case-dispositive; therefore, the Court will only address this issue and need not reach any of the remaining issues in this case.

A. Delaware's Statute of Limitations Applies

The parties agree in supplemental post-trial briefing that Delaware is the proper forum for this dispute. Consistent with the principle that the procedural law of the forum state controls, the general rule is that the forum state's statute of limitations applies.[15] Therefore, Delaware law governs the applicable statute of limitations.

---

[14] Luxeyard also claims that the CDs were one of many financing rounds with express preference rights on the company and, therefore, Luxeyard cannot pay Plaintiffs without making a *pro rata* payment to all debenture holders. Luxeyard also argues that because Plaintiffs fundamentally assert a securities law claim, it should be brought in Federal Court. Because the Court finds that Plaintiffs' claim is ultimately time barred, the Court does not address Luxeyard's alternative averments.

[15] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *3 (Del. Super. Dec. 29, 2015) (quoting *Chaplake Holdings, Ltd. v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001) ("As a general rule, the law of the forum governs procedural matters"); *Am. Energy Tech., Inc. v. Colley & McCoy Co.*, 1999 WL 301648, at *2 (D. Del. Apr. 15, 1999) ("Statutes of limitations are generally considered to be procedural rather than substantive law")).

6

The CDs and the DPA contain conflicting choice of law provisions. The CDs contain a Delaware choice of law provision, while the DPA states that New York law governs. Under Delaware law, however, choice of law provisions do not apply to statutes of limitations unless expressly included.[16] Where no provision expressly includes statutes of limitations, the law of the forum applies as it is a procedural matter.[17] Here, neither choice of law provision expressly includes a statute of limitations. Thus, neither is instructive and the law of the forum state, Delaware, applies.

The exception to the general principle that the procedural law of the forum state governs is inapplicable here. The exception occurs when "the procedural law of the foreign state is so inseparably interwoven with substantive rights as to render a modification of the foregoing rule necessary, lest a party be thereby deprived of his legal rights."[18] Plaintiffs, however, have conceded that Delaware substantive law applies.[19] From the inception of this case to post-trial, Plaintiffs cited and relied upon Delaware substantive law.[20] Thus, there is no "foreign state" at play.

---

[16] *Pivotal Payments*, 2015 WL 11120934, at *3 (citing *Am. Energy Tech.*, 1999 WL 301648, at *2-3).

[17] *Id.*

[18] *MPEG LA, L.L.C. v. Dell Global B.V.*, 2013 WL 812489, at *3 (Del. Ch. Mar. 6, 2013) (quoting *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 1994 WL 317557, at *4 (Del. Super. Apr. 15, 1994)).

[19] *See* Pls.' Post-Trial Op. Brief at 5 ("[t]he Debentures are valid and existing contracts governed by Delaware law").

[20] *See generally* Complaint; *see also* Pls.' Post-Trial Op. Brief.

Plaintiffs' Post-Trial Supplemental Brief only suggests that the Court *may* apply New York law.

Even if New York substantive law applied, there is no evidence suggesting that New York law is so inseparably interwoven with Plaintiffs' breach of contract claim thereby necessitating a deviation from the general rule. New York's six-year statute of limitations for breaches of contract and promissory notes is a general procedural limitation. Plaintiffs have not put forth any evidence to suggest that New York's statute of limitations has a special connection to the state's substantive law, or that the two are inseparably interwoven. This finding is consistent with this Court's previous holdings that statutes of limitations are not inseparably interwoven with substantive rights, even where it consequently bars the claim and deprives a plaintiff of redress.[21]

The Court therefore finds that Delaware's statute of limitations applies.

B. Plaintiffs' Claim is Barred by Delaware's Statute of Limitations

Statutes of limitations, by their very nature, are harsh.[22] "When a plaintiff fails to file a timely complaint, a jurisdictional defect is created that cannot be

---

[21] *See Pivotal Payments*, 2015 WL 11120934, at *3 ("The Court finds that the parties have not demonstrated that the laws of New York or Canada are so inseparably interwoven with the substantive rights as to cause a deviation from the general rule. The Court will apply the statute of limitations of the forum"); *see also TrustCo Bank v. Mathews*, 2015 WL 295373, at *5 (Del. Ch. Jan. 22, 2015).

[22] *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 920 (Del. 2004) (citing *Mary A.O. v. John J.O.*, 471 A.2d 993, 995 n.4 (Del. 1983)).

excused."[23] Whether Plaintiffs' action is barred by the statute of limitations depends on whether the CDs are promissory notes. Plaintiffs contend that the CDs are promissory notes and thus, the six-year statute of limitations for promissory notes under Section 8109 applies.[24] Luxeyard argues that because the CDs lack the requisite characteristics of promissory notes, the general three-year statute of limitations under Section 8106 for breaches of contract applies.[25]

The Court finds that Plaintiffs' investments are subject to the three-year general statute of limitations because the CDs are not promissory notes. Accordingly, the Court finds by a preponderance of the evidence that Plaintiffs' claims were not timely filed within the three-year period, and no tolling exception applies to extend the statute of limitations period.

---

[23]    *Id.* (citing *Mary A.O. v. John J O.*, 471 A.2d at 995; *Riggs v. Riggs*, 539 A.2d 163 (Del. 1988)).

[24]    "When a cause of action arises from a promissory note, bill of exchange, or an acknowledgment under the hand of the party of a subsisting demand, the action may be commenced at any time within 6 years from the accruing of such cause of action." 10 *Del. C.* § 8109.

[25]    "No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title." 10 *Del. C.* § 8106(a).

9

1. *The Convertible Debentures are Neither Promissory Notes nor Negotiable Instruments*

Throughout the course of this action, Plaintiffs have confusingly referred to the CDs at issue as "convertible debentures," "loans," and "promissory notes."[26] No matter the classification, the evidence presented at trial is that Plaintiffs did not invest in promissory notes. Therefore, Plaintiffs' breach of contract claim arising out of their CDs is subject to a three-year statute of limitations.

A promissory note is a form of negotiable instrument defined as "a written promise by one person to pay another person, absolutely and unconditionally, a sum certain at a specified time."[27] This definition is fundamentally identical to the definition of a "negotiable instrument" under the Delaware Uniform Commercial Code ("DUCC").[28] The DUCC defines a "negotiable instrument" as:

> An unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

---

[26] *See*, *e.g.*, Complaint (referring to CDs as "promissory notes" and "notes," but attaching documents titled "Convertible Debenture"); Trial Tr. (Nov. 24, 2020) at 34:18 (referring to the CDs as "my client's debentures" and recognizing that the CDs contain conversion features), 110:15-23-111:1-5 (discussing notice of default regarding "promissory notes"), 28:4-7 ("I think we agreed earlier that this lawsuit here is about certain 10 percent convertible debentures that were issued to my clients, but they were not repaid; correct?").

[27] *Saunders v. Stella*, 1989 WL 89518, at *2 (Del. Super. June 29, 1989). *See also Fineberg v. Credit Intern. Bancshares, Ltd.*, 857 F. Supp. 338, 351 (D. Del. 1994).

[28] *See* 6 *Del. C.* § 3-104(a).

(2) Is payable on demand or at a definite time; and

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.[29]

Thus, to be negotiable, an instrument must: (1) be signed and in writing;[30] (2) contain an unconditional promise to pay a fixed amount in money; (3) be payable to bearer or order on demand or at a definite time; and (4) contain no other undertaking or instruction to do any act in addition to the payment of money.[31] Money is defined as "a medium of exchange currently authorized or adopted by a domestic or foreign government."[32]

This Court has previously recognized, citing Professors White and Summers' treatise on commercial law, that a negotiable instrument "is a peculiar animal and that many animals calling for the payment of money and others loosely called

---

[29] *Id.*

[30] *See* 6 *Del. C.* § 3-104 cmt. 1 ("the term "negotiable instrument" is limited to a signed writing that orders or promises payment of money").

[31] 6 *Del. C.* § 3-104(a)(1-3); *see also* 6 *Del. C.* § 3-104 cmt. 1.

[32] 6 *Del. C.* § 1-201(24).

11

'commercial paper' are not negotiable instruments and not subject to the rules of Article 3."[33]

Pursuant to the Uniform Commercial Code, which Delaware has adopted, negotiability is determined at the time of issuance.[34] If a purported note is not negotiable, it should be construed as a contract.[35]

In determining whether the CDs are negotiable instruments, and thus promissory notes, it is essential that the promise to pay a fixed amount of money be unconditional.[36] Under the DUCC, a promise is unconditional unless it states: (1) an express condition to payment; (2) that the promise is subject to or governed by another writing; or (3) that rights or obligations with respect to the promise are stated in another writing.[37] Therefore, to be unconditional, the promise to pay cannot be subject to another agreement or the occurrence or nonoccurrence of another event.

Here, the CDs are conditional because they contain an express condition for payment. The CDs contain a mandatory conversion provision stating that:

> If at any time prior to the Maturity Date, (a) the shares of Common Stock underlying this Debenture are registered in a registration statement under the Securities Act or the shares of Common Stock

---

[33] *Jacob v. Harrison*, 2002 WL 31840890, at *4 (Del. Super. Dec. 16, 2002) (quoting 2 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 16-1, at 70 (4th ed. 1995)).

[34] Am. Jur. 2d, Bills and Notes § 36; *see also* 6 *Del. C.* § 3-104(a)(1).

[35] *Gem Global Yield Fund, Ltd. V. Surgilight, Inc.*, 2006 WL 2389345, at *6 (S.D.N.Y. Aug. 17, 2006).

[36] 6 *Del. C.* § 3-104 cmt. 1.

[37] 6 *Del. C.* § 3-106(a).

12

underlying this Debenture are available for resale pursuant to Rule 144 or similar rule, without limitation, (b) for a period of ten consecutive trading days the closing bid price for the Company's Common Stock remains at or above $1.00; and (c) the daily volume of the Common Stock during such consecutive ten day period is at least 50,000 shares per day, then all outstanding principal and accrued but unpaid interest under this Debenture shall automatically convert into shares of Common Stock…[38]

In short, if the events contemplated in the mandatory conversion provision occur, then payment is excused and any amount owed is automatically converted into stock. The promise to pay money is therefore conditioned upon the nonoccurrence of the events in the mandatory conversion provision of the CDs.

As aforementioned, negotiability is determined at the time of issuance. Consequently, the negotiability of the CDs remains the same regardless of whether the mandatory conversion actually occurred. The mere presence of the condition renders the CDs not negotiable. Thus, because the CDs are conditional, the CDs are not negotiable nor promissory notes.

### 2. *Plaintiffs Did Not Timely File this Lawsuit*

The statute of limitations for a breach of contract is three years.[39] A cause of action begins to accrue "at the time the contract is broken, not at the time when the

---

[38]     *See*, *e.g.*, JX 13 at Art. 2(f).

[39]     *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *21 (Del. Super. Aug. 16, 2021) (citing *Wedderien v. Collins*, 2007 WL 3262148, at *4 (Del. Nov. 6, 2007); 10 *Del. C.* § 8106).

actual damage results or is ascertained."[40]  Although draconian in nature, a court cannot extend the limitations period out of notions of fair play.[41]  When a claim falls outside the statute of limitations period, the plaintiff bears the burden of proving that one of the tolling doctrines adopted by Delaware courts applies.[42]

The CDs had a maturity date of January 31, 2014.  As Plaintiffs alleged in their complaint and as Lev and Mireskandari testified at trial, on February 25, 2014, Lev reached out to Mireskandari regarding the status of their investments and indicated legal action would be forthcoming.[43]  Therefore, at the latest, Plaintiffs' cause of action began to accrue on February 25, 2014.  Pursuant to Section 8106, Plaintiffs were required to file their action by February 25, 2017.  Because Plaintiffs did not file their action until April 5, 2018, Plaintiffs' action is barred by the statute of limitations unless they can demonstrate a tolling doctrine applies.

Under Delaware law, there are circumstances in which the running of the statute of limitations can be tolled.  "These exceptions include: 1) fraudulent concealment; 2) inherently unknowable injury; and 3) equitable tolling."[44]  "Each

---

[40]     *Worrel v. Farmers Bank of Del.*, 430 A.2d 469, 472 (Del. 1981) (internal quotations omitted).

[41]     *Intermec IP Corp.*, 2021 WL 3620435, at *21 (citing *Trustwave Holdings, Inc. v. Beazley Ins. Co., Inc.*, 2019 WL 4785866, at *4 (Del. Super. Sept. 30, 2019).

[42]     *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008).

[43]     Complaint ¶ 22; Trial Tr. (Nov. 24, 2020) at 102-105; Trial Tr. (Nov. 30, 2020) at 82:7-23-83:1-12.

[44]     *Smith v. Mattia*, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010).

exception rests on the premise that the statute of limitations should be tolled where the facts underlying a claim were so hidden that they could not have been discovered by a reasonable plaintiff. Indeed, if one of these exceptions applies, the statute will only begin to run upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which if pursued, would lead to the discovery [of the injury]."[45] Here, none of these exceptions apply. Plaintiffs have not met their burden to demonstrate that the statute of limitations period should be tolled, and their claim is untimely.

Plaintiffs argue in their post-trial brief that the statute of limitations "was tolled by Mireskandari's repeated and unequivocal promises to pay Plaintiffs the amounts due under the Debentures."[46] This statement, with no support from the trial or evidentiary record in the case, cannot clear the hurdle of establishing tolling of the statute of limitations under Delaware law.

The only possible doctrine applicable to toll the statute of limitations in this action is that of fraudulent concealment. "The fraudulent concealment doctrine presents an exception to the usual rule that ignorance of the facts does

---

[45]     *Id.* (internal quotations and citations omitted).
[46]     Pls.' Post-Trial Op. Brief at 18-19.

not toll the statute of limitations."[47]  "Fraudulent concealment requires an affirmative act of concealment or 'actual artifice' by a defendant that prevents a plaintiff from gaining knowledge of the facts."[48]  "Defendant's promise to make repairs or remedy the alleged breach is insufficient to toll the statute of limitations."[49]

Here, no fraudulent concealment exists.  The trial record contains no evidence that either Luxeyard or Mireskandari prevented Plaintiffs from gaining knowledge about the maturity date of the CDs and Luxeyard's failure to comply with the terms of the CDs.  To the contrary, Lev and Mireskandari's testimony indicates that they were in contact about the CDs and Plaintiffs' attempt to recoup their investments.  The CDs, by their own terms, also indicate that January 31, 2014 was the maturity date and the time any funds would be owed, if applicable.  Plaintiffs did not take any discovery in this action and failed to present any evidence at trial or otherwise to suggest fraudulent concealment.[50]

Even though Plaintiffs failed to present any evidence at trial regarding the remaining tolling doctrines, the doctrines likewise do not apply for similar reasons. The inherently unknowable injuries doctrine fails as it applies only when "no

---

[47]  *Burrell v. Astrazeneca LP*, 2010 WL 3706584, at *7 (Del. Super. Sept. 20, 2010) (internal quotation and citation omitted).
[48]  *Id.* (quoting *Weiss v. Swanson,* 948 A.2d 433, 451-52 (Del. Ch. 2008)).
[49]  *Techton Am., Inc. v. GP Chemicals, Inc.*, 2004 WL 2419129, at *2 (Del. Super. Oct. 25, 2004).
[50]  Pls.' Post-Trial Op. Brief at 18-19.

16

observable or objective factors [] put a party on notice of an injury" and when plaintiffs can "show that they were blamelessly ignorant" of the injury.[51] In essence, "the running of the statute of limitations is tolled while the discovery of the existence of a cause of action is a practical impossibility."[52] Here, this is simply not the case. From the onset of the litigation, Plaintiffs were aware of the maturity date of the CDs.

Likewise, the doctrine of equitable tolling does not apply. Equitable tolling applies "for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary."[53] Although the Court can infer from the record that Mireskandari is a fiduciary, there is simply no evidence to suggest that Mireskandari engaged in self-dealing. Based on the evidence at trial, Plaintiffs have failed to establish that a tolling doctrine applies. Thus, Plaintiffs' claims are barred by the statute of limitations.

---

[51] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at \*5 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999).
[52] *Id.* (quoting *Ruger v. Funk,* 1996 WL 110072 (Del. Super. Jan. 22, 1996)).
[53] *Id.* at 6.

## III.    Conclusion

For the reasons stated in this opinion, judgment is entered for Luxeyard, and Plaintiffs' claim will be dismissed as time-barred under 10 *Del. C.* § 8106.  The parties shall bear their own attorneys' fees and costs.  **IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**